and the Consolidated Cases. Mr. Vladeck. Mr. Chief Justice, and may it please the Court, at the heart of these complicated cases is the simple and well-settled distinction between Federal officers who are appointed to a second office and those who have been assigned to exercise additional duties germane to their original appointment, who hold one office, not two. The dual office-holding ban incorporates this distinction, prohibiting active-duty military officers from holding a second office that requires nomination by the President and confirmation by the Senate, absent express congressional authorization, while generally allowing military officers to be assigned to exercise the duties of such positions. That's why when the four judges at issue here began to serve as appointed judges on the CMCR, the Court of Military Commission Review, it violated the dual office-holding ban and disqualified them from hearing the Petitioner's appeals. Congress created the Court of Military Commission Review in 2006 as part of the Military Commissions Act, and the initial plan for the CMCR was modeled very much on the then-existing courts of criminal appeals in the court-martial system, right down to how the judges were to be selected. So in the original language of the 2006 Act, judges could be assigned by the Secretary of Defense to the CMCR, and those judges could either be civilians or military officers. In 2009, when Congress turned around the CMCR, when Congress decided to make it more independent of the executive branch, one of the measures it pursued was to bifurcate that provision and to break out the assignment of military officers and the appointment of, quote, additional judges by the President with the advice and consent of the Senate. And it's our submission that when Congress did so, it created a civil office, and it did not expressly authorize military officers to hold that civil office. That's why when the D.C. Circuit suggested in the Nashiri case that there is a constitutional problem with the assignment of military officers to the CMCR, and the President responded by appointing five of those officers, four of whom are relevant here, to that court, it triggered the dual office-holding ban and, in our view, disqualified those officers from continuing to serve on the CCRs. Ginsburg. Are you saying it was a suggestion of the D.C. Circuit that the constitutional problem would be cured by appointing these judges to the CMCR? That gave you the basis for your lawsuit. In other words, when Congress said it authorized CCA judges to serve on the CMCR, and said the Secretary of Defense may assign persons who hold military positions, you had no case, right? We certainly would have no case under the dual office-holding ban, Justice Ginsburg, for the simple reason that when military officers are assigned, whether to the CCAs or to the CMCR, they don't hold a second office in the first place. There, of course, was the Appointments Clause challenge to those assignments. But, yes, there would be no problem under this statute in that circumstance. And you say the consequence now, because they are appointed rather than assigned, is that they not only can no longer serve on the CMCR, but they are out of the service entirely. That's rather draconian to these people who were just doing what they were assigned to do and now told, sorry, you're out of the military, although you spent 19 years here, too bad. So just to clarify, they can still serve on the CMCR, right? But we are not challenging the appointments to the CMCR. Our argument is simply that that converted these officers into civilians. But to Justice Ginsburg's point, Justice Ginsburg, we would just suggest that it was the consequence Congress wrote into the statute in 1870. The government does not dispute that before 1983, at least, there would have been no question that that was the appropriate consequence in this case. And it also reflects the common law incompatibility rule. Ginsburg. Ginsburg. What about the idea of fair notice to people who have devoted their lives to military service and then told, you're out? There's no question, of course, that Congress could make these officers whole if there was any regard in which this action led to the deprivation of benefits. But, of course, this has happened before. This Court and the Court of Appeals for the Armed Forces has ruled at various points in the past that you had military officers who were wrongfully appointed, that you had military officers who were acting ultra-virus. We don't dispute that it's an unfortunate consequence for these four officers. We just think it is the one that the common law and the statute demands. Alito, what do you make – what do you do about the fact that in 1983, Congress eliminated the part of 973 that said that an officer is automatically terminated if the officer accepts a covered civil office? And what about the savings clause which says that nothing in section 973b shall be construed to invalidate any action undertaken by an officer in furtherance of assigned official duties? So I think the answer to both questions, Justice Alito, depends upon placing the 1983 amendments in context. And if you'll indulge me, I'll try to do so. The purpose of the 1983 amendments, we and the government agree, was in direct response to the OLC opinion, which had called into question the widespread practice of JAG lawyers' military officers serving as special assistant U.S. attorneys and prosecuting ordinary civilian offenses on military installations. Roberts. We can accept that that might have been the purpose of the statute, but what do we do with the text, I think, is what Justice Alito is saying. I told you, and if you'll bear with me, I'm hoping to get there, Justice Gorsuch. So the point of the statute was to basically say these assignments are not, in fact, a problem under the dual office holding ban because they're not reflecting a military officer holding two offices, that, in fact, the pre-1983 statute had been construed by the Justice Department, perhaps overbroadly. And so both the savings clause and the elimination of the automatic termination language were with an eye toward this purpose, to narrow the scope of the dual office holding ban. Roberts. Got it. Still waiting for the text argument. So there's no text, of course, on termination. Now, the text of the savings clause refers to actions in furtherance of assigned official duties. You'll find this at page 10a of the blue brief. And, of course, the question is what does assigned mean in that provision? Our argument is that assigned there is in contrast to appointed or elected, that because the 1983 amendments were about reasserting the distinction between holding two offices and simply exercising additional duties as part of your original military office, it makes sense, it's appropriate, it's consistent with the text to read assigned in that context to mean exactly what the JAG officers had been doing that triggered the statute in the first place. They had been exercising the functions of a civil office as part of their assigned official duties. Sotomayor So what do we make of the words except as otherwise authorized by law? It seemed to me that what was the purpose of the automatic termination were people who were running for public office without authority by law. They were meaning there was no Federal law saying they could do this. So what do you do with this, with that except? So I think, I mean, a good example, there are, of course, examples where Congress has expressly authorized military officers to hold a second, even civil office. And perhaps the most common and familiar example is the CIA director. The director of the CIA, the government I don't believe disputes that that's a civil office, Congress has expressly authorized that office to be held by a military officer. And so the question is the question is there's a separate statute, I believe it's 10 U.S.C. section 528, Justice Sotomayor, where Congress has said that the CIA director may be a military officer without any consequence inuring to his military service, without losing his commission, without losing benefits, without losing rank or pay or anything else. The government argues here that the Military Commissions Act itself provides comparable authorization, that Congress, when it allowed military officers to be assigned to the CMCR, was showing similar approval. And frankly, again, I think that misstates the distinction between being assigned to exercise additional duties. Congress clearly did authorize military officers to be assigned additional duties as CMCR judges and being appointed to a second office. There's no language in the Military Commissions Act, especially the provision that refers to the appointment of additional judges, that's section 950FB3, and I apologize for the number of section numbers and acronyms. There's no language in that provision, Justice Sotomayor, that comes anywhere near suggesting that in 2009 Congress was thinking about military officers when it created this separate appointed office that it was allowing additional judges to hold. What about 9 – what about – I mean, there are a lot of statutory hurdles you've got to get over. What about 973D, which delegated to the Secretary of Defense the authority to prescribe regulations to implement the ban on dual office holding? And the Secretary has said in regulations that the actions undertaken by a member in carrying out assigned military duties shall be invalidated solely by virtue of such member having held or exercised the function of a civil office in violation of the prohibitions of 973B. So I think – thank you for pointing out the directive. I think the key language in the directive is actually the provisions at sections 4.6, which you'll find at pages 18a and 19a of the blue brief. And what the directive does, Justice Alito, is the directive says we, the Defense Department, are recognizing circumstances. Where is this? I'm sorry. I'm sorry. It's pages 18a and 19a of the blue brief in the appendix. The directive was the Secretary's response to the provision Justice Alito cited to section 973D, which delegated to the Secretary of Defense the power to promulgate regulations to enforce section 973. And, Justice Alito, I think it's telling that the Secretary's response, and this is page 18a of the blue brief, was to delineate eight specific categories of cases where termination of the officer's military status was not to be the consequence, basically reflecting the Vietnam-era concerns that the government raised in its brief, identifying circumstances where the remedy for a violation of the statute was not going to be forfeiture of military office. What – I'm sorry. I'm just curious why this is the civil office, whether this is – can you hear me? I can. Thank you, Justice Breyer. So on civil office, and I want to make sure I get back to Justice Alito's question. But on – so, Justice Alito, as we say in our reply brief, it would have made no sense, there would have been no need for the Secretary to identify the eight circumstances in which a military officer was not going to have to surrender his military office if the 1983 statute did, in fact, as the government argues, categorically eliminate termination as a consequence. If I might turn to Justice Breyer's question, with regard to civil office, for us, of course, the key to concluding that an appointed judge on the Court of Military Commission Review holds a civil office is the fact that Congress has created the office by statute, that it exercises the sovereign authority of the United States, and that it can be held and indeed is held by civilians. That is in contrast to the law. Breyer, I mean, after all, Congress creates the military by statute. And it appoints all the officers by statute. And they're all confirmed by Congress. And this is a commission that normally serves in areas where it could be under civilian control, but the civilian courts are not functioning, and therefore, we have a military commission serving the ordinary officers. Now, all those things seem military, special, and if you want to know whether – if you want to use did Congress intend military officers to serve on it, and in the absence of that, it's civil, they did. Breyer, so what's civil about it? I mean, except the fact you mentioned, it's of course true, it is of course true that there is one civilian on it, or two, or three. That's true. Is there anything that says a military officer, which would otherwise be totally military, suddenly becomes civil because you appoint one person? Well, I would start, Justice Breyer, with the government's definition of what a military office is. A military office, the government's definition, the court of claims, we cite this in our brief, has long been defined by rank, title, pay, and command. And of course, judges who are appointed to the court of military commission review have only one of those things, pay, which of course is itself distinct. But to the point that I took your question to be asking about the function, the government makes much of the claim that the court of military commission review is exercising a classic military function. And I think it's worth stressing it's actually neither classic nor military. There had never been appellate review of military commissions until 2005. And up until that point and to this day, the principal judicial review of military commissions on the battlefield or off, Justice Breyer, has been by civilian judges, whether collaterally through habeas corpus or whether on direct appeal in the court marshal system to the court of appeals for the armed forces, a court staffed by civilians, or as Congress contemplated in the Military Commissions Act, through the CMCR to the D.C. Circuit, a court also staffed by civilians. Breyer, I think you had military commissions, didn't you? There were military commissions, Justice Breyer. There was no mechanism for appeal. The only one is to distinguish between appeal and just carrying out a trial. Well, I think the distinction is structural, Justice Breyer. So a military commission, like a court marshal, is not a stand-in court. It is not a court of record. It is created solely by the military. It is governed by the military. Congress, when it created the predecessors to the CCAs in 1950 and the predecessor to the court of appeals, when Congress created this structure, Congress was intentionally mapping on to the court marshal system civilian appellate review. And the purpose of that was not because it was viewed as classically a military function, but because Congress was of the view that we needed civilian judges exercising oversight. But one last point, just back to the beginning of this statute. In 1873, three years after the statute was written, the Attorney General concluded that the Secretary of War, who holds about as military an office as I can think of, nevertheless held a civil office for purposes of this very statute. And that, I think, reflects, Justice Breyer, the longstanding view that civil office in this context is meant to be construed capaciously. Back to Justice Alito's question, it's part of why, in 1983, Congress added the three limiting criteria, that the civil office has to require an election or an appointment by the President and confirmation by the Senate or one of the offices listed in the executive schedule, because the standalone term, civil office, had been read so capaciously. Ginsburg's question, is there anything incompatible about serving on a CCA, which deals with ordinarily court-martials, and service on a CMCR, which deals with enemy combatants? So, I mean, certainly, Justice Ginsburg, we think there's first, of course, statutory incompatibility, that the dual office-holding ban, if read correctly, creates a statutory incompatibility where any functional incompatibility is actually a secondary  Ginsburg's question, is there any functional? So we suggest that there is. I mean, indeed, this is why we think that the government's position, even if one were to accept it, raises serious separation of powers concerns, because you have the specter of an officer who is a principal officer over here on one court and an inferior officer over here on another court, serving with similar staffs, interacting with similar officers in the appellate counsel's office, for example, in both the government's, the prosecution's and defense side. And so we think that there's a reason why the government has been unable to identify a single example of this kind of dual office-holding in American history. Roberts. What is the big deal, though? What is the big problem with being a principal officer in one context and an inferior officer in the other? There's no default. It's not like you're branded one or the other, that you carry it around with you wherever you go. No, of course not, Mr. Chief Justice. And it's not our suggestion that it's a categorical incongruity. Our point is simply that if you disagree with our interpretations of the relevant statutes, and if you conclude that there is, in fact, no problem today with this particular arrangement, in this context there might be a unique concern of incongruity because, Mr. Chief Justice, of the overlap in personnel, because of the sensitivities of the command structure, because of the very real possibility that individuals with different authority on different courts might not intentionally, but just by being there, unduly influence the actions of those who are subordinate to them in one context, but perhaps their peers in another. Sotomayor, you didn't raise the amicis point, but what position do you take with respect to that point? I know you don't want to be non-suited, but I trust your independent judgment that you'll give us your views on that presented question. And I'm mindful that my Federal Courts class begins tomorrow. So with regard to the amicis point about constitutional appellate jurisdiction, I think it's worth starting from this Court's decision in United States v. Coe, which, frankly, I did not know about before this case. Coe is an 1894 decision, which we cite, which the government cites in its brief, where this Court expressly upheld its appellate jurisdiction from the Article I Court of Public Land Claims. And the government – I'm sorry, the appellant in error in that case moved to dismiss the case in the Supreme Court on the ground that this Court lacked constitutional appellate jurisdiction because the relief that the government was seeking in that case was tantamount to what it had sought in Marbury. And this Court expressly rejected that argument. As Chief Justice Fuller wrote for a unanimous court, when Congress has exercised its power to lawfully create a non-Article III Federal tribunal, the quote is, it follows, unquote, that Congress may vest this Court with direct appellate authority to do that. Kennedy, I think there are a couple of differences. First, of course, Congress has never purported to describe the NRB or the SEC as a court. It is a – Kennedy, it's just labels we're talking about? No. So, of course, the label is not sufficient, but we think it is probative. So, for example, when Congress does choose to define a tribunal as a court of record, what that means, of course, is that the court exists independent of the officers who staff it. It means the court is capable of receiving process on its own without the officers who attend to it. And a common law, of course, a writ of certiorari. Kennedy, the NRB doesn't exist if there's a vacancy? There's no NRB anymore? If it's incorate, it's quite possible that the NRB would not be able to hand down decisions. But, Justice Kennedy, the larger point is, we don't think this Court needs to reach what is obviously the much harder question of direct appellate jurisdiction over adjudicative proceedings by an agency here, because here, unlike in the NRB and SEC cases, you have Congress creating a court of record, a court of record, mind you, that is capable of dispensing capital punishment. These are criminal cases, and with the NRB, the NRB would not be able to do that. Breyer, but that isn't the issue. The issue, I think, is that's being raised is what Justice Kennedy said. There are many, many, many adjudicatory bodies in the executive branch. And what the amicus says is, if you don't want to have jurisdiction by cert directly from all of those, rather than through a court of appeals or a habeas court, if you don't want that because you think that is inconsistent with separation of powers, then you'd better find a way or a reason or a sensible difference between this case and the NRB and the SEC. And what the amicus says is that Coe and the other cases that have upheld it, I'm not sure how he deals with Palmore, I don't know about the D.C., I'll have to ask him about that, but the leaving that to the side, they all not only have the attributes of a court, but they also have jurisdiction over a territory. I think that that is what he sees in the prior cases. And he says that is not true here. All right? Now, if you do not agree with that, why? If you have a different test, why? If you would bring in all the NLRB, then say it. So, again, I — first of all, let me take this in order if I might, Justice Breyer. I — Breyer, go ahead. That's a good question. Indeed. Although I hope you'll indulge me in multiple sentences. The — with regard to the territorial point, I think it's worth reminding this Court of its decision in Palmore, where Justice White went out of his way to uphold jurisdiction over the D.C. Court of Appeals, because the territorial courts look like military courts, right? That is to say, the analogy between the military and territorial courts is actually deeply embedded in this Court's non-Article III jurisprudence. And so I think, actually, there's a quite decent overlap between the two. With regard to how this Court could distinguish, and save for another day, the question of when Congress could give it direct appellate jurisdiction over administrative tribunal, I do think the fact that Congress has called the Court of Appeals for the Armed Forces a court of record, that it acts like a court of record, and that it dispenses judgments in criminal cases, are all reasons that distinguish it from administrative adjudication. And if we're really focused on Chief Justice Marshall and Marbury, I think it's worth reiterating that just four years after Marbury, in Ex parte Bowman, the Chief Justice went out of his way to distinguish cases in which this Court was asked to review the decisions of a lower court by which a citizen has been committed to jail. Breyer. Breyer, I thought a court of record was a court of record for years. I must have been under a misapprehension. I thought the appeals courts of the circuits are not courts of records, but the district courts are. And that is because in the district courts there is a record. There is a notary, there is a person there who takes a here, and the courts of appeals, the discussion such as here, though we have it recorded, it's not necessarily a record. And in the courts of appeals, it certainly isn't. I'm fairly sure, Justice Breyer, that the circuit courts are also courts of record. Because? Because they are standing tribunals that produce records, that produce transcripts, that produce proceedings independent of the participants. And judgments. And judgments. And one last point, Justice Kennedy, on judgments. I do think, Justice Breyer, that the judgments piece is part of this. I mean, three years ago, this Court in the B&B hardware case, I think, saw the difficulties of adopting a bright-line rule for when administrative adjudications would or would not be preclusive. That is not true here. There is no question in the court-martial system that when the court of appeals for the armed forces issues a judgment, it is binding, it is preclusive, it is usually sending a service member to prison, and perhaps it's even leading to a capital sentence. Do you think Marbury v. Madison is right? But particularly as to the interpretation with such exceptions as Congress may make. So I will confess, Justice Kennedy, that I may perhaps belong in the school of scholars who thinks that Chief Justice Marshall read both the statute and the Constitution to reach the constitutional question he wanted to reach. I'm not sure that he nevertheless didn't end up with the right with the wrong answer. And again, I think for purposes of the question presented in this case on this Court's jurisdiction, the more relevant case is not Marbury but Bowman. And if I may, Mr. Chief Justice, I'd like to reserve my time. Roberts. Thank you, counsel. Mr. Bomsai. Thank you, Mr. Chief Justice. May it please the Court. This Court lacks Article III jurisdiction to issue the writs in these cases. The CAF is an executive branch entity, something that I believe the government does not dispute. This Court's direct review of executive branch officials is necessarily original, not appellate, as established by Marbury itself. These two propositions decide this case. Now, my friends on the other side have made the argument by analogy to the territorial and D.C. courts, and that's the principle. In fact, it's the only argument on which they rely, but it's very important for this Court to understand that that is a slippery slope to go down, because territorial and D.C. government is very different in a number of respects. And so, for example, I understood the Court to be asking, well, if the Court were to apply the territorial cases, such as United States v. Cove, permitting review from the highest court in the territory to military courts, then wouldn't that open up the possibility that review would be permissible from other adjudicatory bodies in the Federal agencies, many of which can be characterized as courts under the definition offered by my friend, such as the tax court? Sotomayor, I'm sorry, except that, unlike those other agencies, territories, the D.C. court and military organizations are explicitly, Congress is explicitly authorized to file rules and regulations. The three provisions are almost identical. And why aren't military courts virtually geographic? Most military operations happen in bases, domestically, or in foreign fields. So in what ways are they different geographically? Your answer, Your Honor, a couple of answers to that. The first is that they're not geographic in the sense in which the territorial or D.C. courts are, where we have courts of general jurisdiction that step in for no State apparatus is available. And so that is the rationale that this Court has given in a number of its territorial court cases. Sotomayor, we've also said with respect to military justice that it is the jurisdiction of the commander in charge of either that base or that division. So in those ways, civil law doesn't apply either. Your Honor, it's true that civil law doesn't apply. It's military law that is applicable in these courts, Marshal. But I don't think we're talking about territorial jurisdiction in the same way that we are with respect to territorial governance. And if we were, then, as I pointed out in my motion for oral argument time, the government's position is that the Appointments Clause does not apply to the territories we're currently sitting in a jurisdiction in which the mayor is elected. And none of those departures from the ordinary separation of powers could possibly be applicable within the military system. So there must be some narrower principle to explain, and this Court will have to draw a distinction between the territorial schemes of governance and the military and other schemes of governance in Federal agencies. Roberts, I understand your argument that they're different because I don't understand what possible pertinence the fact that they cover a territory as opposed to a subject matter has to do with your Article III objection. Your Honor, it's both. It's the reason why territorial courts were created, and this is Chief Justice Marshal's opinion in American Insurance v. Cantor points this out, that Article III courts, under the understanding of Article III at the time, may not have been able to resolve certain disputes that were necessary just in order to govern a group of people, such as divorce disputes. So your doctrine wouldn't apply if the Article III court couldn't do it? Then you have to say it's all right for them to do it in a way that seems inconsistent with your theory? Not at all, Your Honor. What I'm pointing out is that the territorial courts were created for a certain reason, and that is that they stepped into the shoes of State courts where State courts were not available. And that explains why certain principles of the structural separation of powers don't apply within the territories in D.C. I guess I don't understand why the exact same rationale wouldn't apply here. In other words, you know, a member of the military assaults somebody on a military base, and Congress decides we don't want that assault to be prosecuted in the State court. We want that assault to be prosecuted within a system of military justice. So Congress is essentially doing the same thing. Look, the regular State courts are not suited to decide some set of cases. We're going to set up a different set of courts, territorial on the one hand, on this hand, partly territorial, but also defined by subject matter. Your Honor, I think it is different. And by people, really. I think it is different in relevant respects. And the court's decisions in this area have treated these two types of courts differently. And so, for example, ex parte of the Landigam or the Gordon v. United States case, which we cite in our brief, are about military courts and about the initial incarnation of the court of claims. And this Court denied jurisdiction and said that it could not directly review either of those courts. That contrasts with the Court's approach to United States v. Co. from a territorial court. And so there must be a line that can be drawn between territorial courts and these other types of adjudicatory bodies that are within the executive branch. And I submit that the line that I have proposed is the easiest and best line that explains all the cases, as well as allows the Court to say that all bodies that are within the executive branch cannot be subject to this Court's direct review. Ginsburg-Miller May I go back to the beginning of your argument? You said that the CAAF exercises original jurisdiction. Let me ask you first. Does this case, cases that come to the CAAF, arise under Federal law? Gershengorn Yes, Your Honor. And if I may just say that I believe that this Court exercises original jurisdiction in this case. So I don't believe that the CAAF Ginsburg-Miller All right. Then how does it get to be original jurisdiction when the CAAF is an appellate body that it is not making original deciding in the first instance? It is an appellate body. So it goes to the courts-martial and it goes to the CCA, and then so that's one level of review. CAAF is a second level of review. It is exercising appellate jurisdiction. It's not hearing the case in the first instance? Gershengorn Your Honor, all of that may be right, but for constitutional purposes, the this Court is the first Article III court to be reviewing an executive branch decision. Kennedy Suppose Congress made the CAAF an Article III court? Gershengorn That would be perfectly constitutional, Your Honor. It would completely alleviate the constitutional problem. Kennedy And that would alleviate your concern here? Gershengorn Absolutely, Your Honor. This would fix the constitutional problem. Or alternatively, as with most of the Federal law. Kennedy It wouldn't affect the commander-in-chief argument? Gershengorn Your Honor, that may be some separate argument that I have not fully explored and I don't have a position on that, but. Breyer I'm also worried about the two things. One, if we took your test, what about the D.C.? The D.C. circuit is the exercise of the Federal judicial power, the D is not the circuit, but the court of appeals, but it isn't an Article III court. They have limited terms. Gershengorn The D.C. court of appeals is not an Article III court. Breyer So how do we explain the decision of upholding that, appeals from that? Gershengorn Your Honor, the explanation is that the D.C. courts, the local courts, stand in the same position as territorial courts. Breyer Didn't aren't the territorial courts, they were Article I courts, I guess. But didn't Congress intend, under your theory, to delegate to those courts part of its judicial power or not? Gershengorn That is true. In the territorial courts, they've the the Breyer Were they life appointments? Gershengorn They were not, no, Your Honor. They were not life appointments, but they could exercise the Breyer Okay. So what do you think? I got your point. But now what about the government's argument that what we should do is look back to history and say the tradition at the time of the writing of the Constitution would have been to consider military justice as a functioning judicial system. And that isn't true of the NLRB, and it isn't true of the other agencies. And because they both have the characteristics or many of the characteristics of courts, and would have been so considered historically, that it is appropriate to exercise appellate jurisdiction from their decisions. Gershengorn Your Honor, respectfully, I don't know if that is entirely the government's position that you might want to ask my friend. And that is because the government appears to concede that this Court in Ex parte Volandigam held that it could not directly review a military commission in that case because the military commission did not exercise the judicial power in a relevant sense. And as I understand the government's argument, it is that this Court can review the CAF. The CAF is different because it has been codified by Congress. I see that my time is up. Roberts Why don't you take another couple minutes? Gershengorn Thank you, Your Honor. The CAF is relevantly different because it has been codified by Congress and exercises its authority in a more formalized sense than the ad hoc military commissions in the Volandigam case. Kennedy When we write this opinion, whichever way we come out on the issue you are arguing, will it be necessary for us to define what a court is? Gershengorn Your Honor, it would not be necessary. I submit that the simplest way to decide this case is the one that I proposed in my opening, which is that it is undisputed, I believe, the government does not dispute that the CAF is within the executive branch, and this Court could simply say that its direct review of the executive branch is necessarily the original. Kagan Well, but how does that really fit with the language of Article III, Section 2? Because what Article III says is the judicial power shall extend to all cases, and then talks about in those cases or in various ones of them, the Supreme Court shall have appellate jurisdiction. Now, there might be uncertainty as to what cases means with respect to a good many things, but I would have thought that when we are talking about the proceeding here, which is a criminal prosecution with big criminal sentences, including the death penalty, I would have thought that those criminal prosecutions are indeed cases under the language of Article III. Gershengorn Your Honor, I think the answer to that question is that Marbury establishes that it's more than simply a case that triggers this Court's jurisdiction, that there is something to the language of original and appellate. And original jurisdiction, because it's specified in the Constitution, by implication means that appellate jurisdiction can only be exercised from certain types of bodies. And incidentally, that is not only the position that Chief Justice Marshall embraced in Marbury, but it's also the position that Alexander Hamilton embraced in the Federalist Papers. It was proposed at a number of the State conventions ratifying the Constitution and embraced by a number of the cases that the Court decided in its early years that are cited in our brief. And so I think that answers why it's not simply a matter of a case, and one could understand the dispute between Marbury and Madison. Kagan So if I understand your answer, you're not pointing to anything in Article III, is that correct? You're pointing instead to Marbury and saying that the principle derives from there. But I could look at Marbury and say, you know, what Chief Justice Marshall was talking about was James Madison handing around commissions, nothing to do with criminal prosecutions. Katyala Your Honor, I do believe that I'm pointing to something in Article III, and that's the original and appellate jurisdiction provisions and the appropriate structural inferences that can be made from them. Kagan But that's all with reference to the cases. The Supreme Court shall have appellate jurisdiction over these various cases. It doesn't talk about, you know, which particular courts or whether somebody's exercised in which particular powers. It just talks about cases. Katyala That is true. That's true. It does not say which particular courts. It's not specified in so many words. But Marbury has that principle, as does, for example, Justice Story in his commentaries on the Constitution, in which he says that appellate jurisdiction must be exercised from a body that is exercising judicial authority and cloaked with judicial power. And so I think that that principle was embraced by the people who wrote Article III, and it's a principle that this Court ought to apply in this case. Roberts Thank you, counsel. Mr. Fletcher. Fletcher Thank you, Mr. Chief Justice, and may it please the Court. Because a question has been raised about this Court's jurisdiction, I'd like to start by explaining why in the government's view Section 1259 validly grants this Court appellate jurisdiction to review the Court of Appeals for the Armed Forces decisions, and then I'd like to turn to the merits and explain why Judges Burton, Seltnick, Herring, and Mitchell did not violate Section 973b when they accepted presidential appointments to the Court of Military Commission review, and also why any violation that did occur would not have ejected those officers from the military or provided any other basis for invalidating their decisions upholding the court-martial convictions at issue here. Now, on the jurisdictional question, we start, as I think all the parties before the Court do, with Chief Justice Marshall's decision for the Court in Marbury v. Madison, which says that the essential criterion of appellate jurisdiction is that it revises and corrects the proceedings in a cause already instituted and does not institute that cause. Under that standard, Marbury was an original case because the parties came to this Court in the first instance and asked for an order directing the delivery of a commission. If you read the report of the decision before you get to the Chief Justice's ruling on affidavit, ruling on objections, hearing testimony, essentially, that was an original action. This case, by contrast, is an appellate action because it comes to the Court on review of the Court of Appeals for the Armed Forces decision, which reviewed a criminal proceeding that originated in courts-martial and that proceeded through the separate military justice system that has existed in some form in our country since the fact that we were there. Roberts. How would you have us distinguish the situation that people are concerned about, which is every alphabet agency in the government, the Congress says, you can appeal from the sanctions that the SEC imposes right to the Supreme Court? Yes. That's – our view is that that would not be a valid grant of appellate jurisdiction if Congress purported to do that. And the reason why the rule that we think this Court should adhere to in this case and the rule we think resolves this case is the one from Coe, the 1894 decision that my friend quoted that dealt with the challenge to this Court's appellate jurisdiction over a territorial court. And what the Court said was, if Congress, in those limited circumstances where Congress can create courts outside the scope of Article III, then it can also vest this Court with jurisdiction to review their decisions. So it creates the NLRB court of final review. Well, I'm not – I don't think it could do that, Mr. Chief Justice, because as this Court's decisions elucidate, there are only very limited circumstances where Congress can create courts outside of the context of Article III. The two – So, in other words, it's okay because we don't have to worry because you can only do it in cases where they've already done it. Well, you can only do it – I think what we would do is we would link the rule about when is this Court's jurisdiction appellate versus original to the existing jurisprudence that this Court has about when can Congress create courts outside of the Article III system. And the two paradigmatic cases where it's uncontroversial and well-settled that Congress can do that are the territories and the military system. Well, when can they not do it? If you're doing anything more than just saying everything they've done so far is okay and nothing else, then what is the rule for telling them when they can create these courts under Article I? So what this Court has said – and again, I just want to illustrate that that's a question that the Court is going to have to grapple with. However it resolves the appellate jurisdiction question here, it has other cases and will presumably again in the future have to confront the question when can Congress create non-Article III courts. All that we're saying is that what follows from that is if the Court decides in that context that Congress can create a non-Article III court, then it can also vest appellate jurisdiction in this Court to review that Court's decisions. And the – Kennedy, I don't think that they could. Kennedy, I don't know that the question has ever arisen in the context of a State court. I can tell you the question has arisen or a related question has arisen in the context of Federal courts. There was a case called Chandler from 1970 where the Court grappled with, but didn't resolve the question whether review of a decision by a circuit judicial counsel was appellate jurisdiction. And the question it was asking is, is what the circuit judicial counsel is doing administrative or is it instead judicial? Breyer, what we're doing is looking, I think, at least I am, I think others are too, for a reason. That is, what is it that I can see the States, you say, the easiest is the Federal courts. I mean, Congress has judicial authority, it re-exercises it. Well, how can we have appellate jurisdiction over State courts? That's because States have sovereignty and they can, in the exercise of their sovereignty, create a judicial system. Well, what about territories? Well, territories, that's a tougher one because it looks like it's Congress's sovereignty, but it isn't. That is to say, sovereign territories are the equivalent of States before they are States. Human societies on territories create judicial systems, and so the territorial courts are analogous to the State courts. What about the D.C. Circuit? Hmm. The D.C. Court of Appeals, rather. That's a tougher one, but maybe rather like the territorial courts, like the State court. Hmm. And now what? Okay. And now he says, I've used this territorial principle, sovereignty arising in territories physically, which aspect of the sovereignty is an authority to create a judicial body, giving us appellate jurisdiction. Military, you don't like that territorial-based distinction because – territorial sovereignty-based distinction because they don't really have – it's not territories. And so now we're looking for another one. That's a long question, but all I'm asking for is what is that other one? And the Chief says it sounds like, which to me it did sound rather like, whatever we've done in the past is all right, but not in the future. And that's a historical one. Hmm. So let me say two things about that. And the first is that the way that this Court has approached territorial courts and the D.C. Court is not quite the way Your Honor suggests it. I know that, but looking at Coe, it doesn't seem to give much of an answer. Well, the answer that it gives is appellate jurisdiction is review of another court's decision at the most basic level. I think everyone agrees with that. And so if you're asked when review of a tribunal's decisions, is it original or appellate, the question is, is that tribunal? All right. Well, at that point, Justice Kennedy's question becomes relevant to me, and he says, all right, Congress says the NLRB – they used to be called, you know, hearing examiners. Now they're called ALJs, which is administrative law judges. And now what we do is produce a court of ALJs, which we call a court, da, da. Yes. And has stenographers, so it's up record, da, da, you see. Now, that's the concern. Yes. And the concern, I think the answer – let me say two things about that. The first is, I think however you might want to resolve the question between legislative courts and the administrative agencies like the NLRB, our view is that military courts, the Court of Appeals for the Armed Forces, is on the territorial side of the line, is on the clearer side of the line, because this Court has always considered those two to be together as the paradigmatic examples of the circumstances. Alito, do you think it's relevant that the President or the Secretary of Defense can alter a decision of the CAAF after it's issued? I don't believe that the President or the Secretary of Defense can do that. They have some limited authority, and this is described in 10 U.S.C. 876, to mitigate sentences, to commute sentences. Well, that's what I'm referring to. So the convening authority shall take action in accordance with the decision of the CAAF unless there is to be further action by the President or the Secretary concerned. That's correct. And the further action – Do you think that's relevant to this, the question before us? I think it might be if the action of the President or the Secretary extended to upsetting the conviction or upsetting the judgment of the CAAF, but that's not the type of action that the President can take. And Congress actually thought about that. And what kind of action can the President take? There are certain types of sentences, death sentences in particular, that require the President's approval before they can be executed. And there are other types of sentences, including the dismissal of an officer that require secretarial approval before they can be executed. In those circumstances, the President or the Secretary can commute those sentences to something less. They can't upset the conviction. And so in our view, the availability of that relief from those officers is akin to relief by commutation in the Federal or State system or to parole. How does that condition work? Kennedy, but where do I look to find the authority for your proposition? You find the statutory provision that speaks to the finality of Court of Appeals of the Armed Forces decisions and court-martial decisions in general is in 876. And I believe the provision that speaks to authority to reduce sentences is in 874, but it's at least referenced there. I guess I am doubting you. If you have the – if the executive prevails in any case, he always has the discretion not to enforce it. I mean, if the judgment is you can, you know, suspend the pay of this service person for this period, he can review it and say, well, okay, you know, the principle is established, but I'm not going to do it, right? Or he wins the authority, he prevails and can say, okay, you can cashier the guy out of the service, but he says, well, he's the best, you know, gunnery sergeant in that area, so I'm not going to do it. I don't understand why it's – why you think he's constrained in any particular way. Well, I think he's constrained the system that the Uniform Code of Military Justice sets up gives the President some ability to reduce or mitigate sentences, but not others, and otherwise makes the decisions of the Court of Appeals for the Armed Forces final and binding. And, in fact, the language in the provision that I was citing to Justice Kennedy earlier is the language that you, Your Honor, quoted in your opinion in Dinetto. So careful, don't we, though, have to assume the constitutionality of that limitation on the President's authority as Commander-in-Chief for this position to work? And second, what if Congress were to alter that scheme and provide the President or the Secretary further authority to alter the results of military tribunals? And, in fact, I think the Secretary, if I'm correct, has to approve the dismissal of any commissioned officer as well. That's correct, yes. Under Act 71B. So there's another limitation on the authority of the military tribunal and another grant to a superior executive officer. So let me say two things about that. The first is, I agree with you that if Congress gave greater authority to executive branch officials, to the President or the Secretary, to set aside military or court-martial convictions, that would change the analysis. But it would be the same. Well, if that changes the analysis, then we're back to the Chief Justice's question, where is the line? And assuming the constitutionality of these limitations, where is the line? How much authority, how much of a court is it before it is no longer a court when it's all sitting in the executive branch, as this Court ruled in Edmonds? So, first and foremost, it's a court that doles out criminal sentences up to and including death. It's a court where an acquittal has double jeopardy effect. Its decisions are given raised judicata effect. Those are not things that the President or the Secretary can alter. Civil? I mean, I can see the next case being civil. There are consequences, maybe not of a criminal nature, but you lose a rank or a privilege or some other sort of, we struggle with what's the difference between civil and criminal all the time in this court. Well, I think there's no doubt that courts martial are criminal. And the fact that they are able to impose criminal punishment. I accept that. I'm saying, well, what about the next case? Why would we draw the line there, when civil penalties today are very harsh and severe? And you can see Congress setting up a court with very extreme civil penalties and very little executive oversight. So I guess I would say the fact that it can distribute criminal penalties is certainly an indication that if we're drawing the line, is it a court, is it not, it falls on the court side of the line. That's what it shares in common with territorial courts. What about, I mean, you're really making me think in this. I guarantee it's a hard question. But maybe we find an analogy in the territorial cases. Can we read the territorial cases as looking at this? Separately out of Article III, the Constitution gives to Congress the power to organize governments in the territory. The governments of a territory involve an executive, legislative, and judicial function. Therefore, in exercising its sovereign constitutional power under Article I, in the Constitution, it is going to have the power to organize governments in territories. It is going to have the power to organize courts of a kind that act like courts and therefore appellate the few. The same is true of the military, which is a separate world, and it is Article I giving them power over the military that lets them do that. The same is not true of the NLRB, which is a specialized agency, and because the judicial and adjudicatory functions that the executive branch performs in its carrying out of executive duties are rulemaking and decisionmaking authorities under execution, not judicial. Yes. You think that might work? I think that works exactly. I think that fits with the way that this Court has looked at courts martial before. It said this is a system of justice that existed before the Constitution. It's a system of justice that's textually recognized in the Fifth Amendment to the land and naval forces from the grand jury requirement, and it's a system that this Court has always understood in light of that history and that textual recognition to be a court system that Congress can create outside of Article III. Mr. Fletcher, maybe it's a good time for us to let you get to the merits of the case. I appreciate that, Mr. Chief Justice. And I think, as some of the questions earlier have suggested, in order to obtain the relief that they're seeking, Petitioners have to clear three hurdles on the merits. They have to show that the CMCR judgeship is a civil office within the meaning of Section 973. They have to show that Congress has not authorized, by law, military officers to hold that office. And then they have to show that a violation of that statute, if it occurred, automatically ejected these officers from the military when they accepted their appointments to the CMCR of May in 2006 and invalidated the officers' subsequent decisions in Petitioners' criminal appeals on the courts of criminal appeals. And in our view, they can't make any of those showings. I'd like to start, if I could, with the civil office question. I think it's common ground between the parties that by preventing or precluding military officers from holding a civil office, what Congress sought to do was to prevent the — to preserve the civilian preeminence over the military, to prevent military encroachment into the civil government. And so a civil office, as we understand it, and as the Department of Defense has long defined it, is an office in the civil government that exercises the powers or authorities of the civil government. It's a nonmilitary office. Judged by that criterion, a judgeship on the court of military commission review is a military office. As its name suggests, the court of military commission review is a military court. It performs a function that military officers have long performed judging violations of the law of war and other offenses triable by military commission committed by alien enemy belligerents. And it performs a function that's very, very similar to what in the court-martial is done by the courts of criminal appeals, which are staffed by military officers predominantly, although that position can also be held by civilians, and which this court explained in Weiss performs a function that is germane to military officers' military office. The court in Weiss went through the history of the military justice system in the court-martial side of the House and explained the role that military officers have long played in that system, and it concluded that as a result of that role, serving as a judge on the court of criminal appeals is germane to holding military office. Obviously, the court in Weiss did not have in front of it section 973, but we think its conclusion on germaneness is very instructive on this question because the court of military commission review performs a function that is very similar to the function performed by the courts of criminal appeals. It was expressly patterned on the courts of criminal appeals, and the statute defining the circumstances under which it can review a case, 950F, is drawn almost verbatim from the statute for the courts of criminal appeals, 866. And just as military officers serving on the court of criminal appeals are performing a military function and are doing something that is germane to their military duties, that's also true when those same officers perform essentially the same function in another military court system. And I think what that illustrates, and by the way, I don't understand my friend to dispute that a judgeship on the court of criminal appeals is a military office, not a civil office of the sort that would be contemplated in section 973. And what that shows is that even if an office can be held by civilians, as the court of criminal appeals judgeship can be, it is still a military office if it's performing a military function. So judged by that standard, we think Petitioner's claim fails in the first instance because the court of military commission review is not a civil office. But even if you disagree with us on that question, we also think that Congress has authorized by law military officers to hold a position on the court of military commission review. And the way that my friend approaches section 973 is through the lens of a signing and appointing. And he wants to draw a sharp distinction between a signing and appointment and read that distinction into the prohibition in section 973. But that's not a prohibition that's found in the language or the history of section 973. Instead, what the statute says is that except as otherwise authorized by law, an officer may not hold or exercise the functions of a civil office. So the concern is not with the manner in which the officer ends up in the civil office. The question is, has Congress authorized military officers to hold or exercise the function of the civil office? And in our view, Congress created a single office when it created the court of military commission review. That office is judged on the court of military commission review. That's the statutory term in section 950F. And Congress then authorized military officers to serve on that court, to hold that office in unambiguous terms in section 950Fb2, where it said that the Secretary of Defense may assign persons who are appellate military judges to be judges on the court of military commission review. That's how all four of the judges who are at issue here were first placed on the court of military commission review. Now, it's true the D.C. Circuit in Al-Nashiri raised questions about whether that And in response to the questions that the D.C. Circuit raised, the Senate and the President heeded the D.C. Circuit's suggestion that they avoid the need to resolve Appointments Clause questions and also appoint those four officers to the court of military commission review under section 950B3. And those appointments essentially ratify the preexisting assignments and mean that now the four judges serve on the court of military commission review by virtue of both the assignment of the Secretary of Defense and the appointment of the President. But in doing that, the President did not create a problem, did not put those officers in an office that they're not authorized to hold by Congress. He just ratified their placement in that office through the means that Congress specified. And finally, just very briefly, we do hope that the Court will answer the question, the merits question, about whether or not a CMCR judgeship is a civil office, because it's important to the government. The government is obligated to comply with the statute. We believe that judges can validly serve on the military – excuse me, military officers can validly serve on the court of military commission review. But if this Court disagrees, obviously, the government is going to have to fix that problem. So we hope that the Court answers the question presented on the merits and holds that 973B does not prevent military officers from serving on the CMCR. But in the event that you disagree with us on that or you don't reach that question, we think also that as the Court of Appeals for the Armed Forces held, any violation of section 973B that occurred would not be a basis for invalidating the judge's decisions on the Court of Criminal Appeals. And that's true for at least two reasons. The first is that the Petitioner's argument that it does invalidate their decisions hinges on the premise that automatically upon the acceptance of a prohibited civil office, the relevant officers are ejected from the military. That used to be the way the statute worked, but for good reason. Congress changed that. It deleted that automatic termination consequence. Now, when a violation of section 973 occurs, the government and the officer have to fix it by either giving up the military office or giving up the civil office. But those things happen as a result of administrative action once the violation comes to light, not retroactively and automatically by virtue of the acceptance of the civil office. And second, and even more clearly, and I'll close on this, Congress enacted a savings clause that says that nothing in section 973 can be used to invalidate the actions of officers in furtherance of assigned official duties. And that perfectly describes what happens here, what happened here. My friend is correct that it may also describe what military officers do in civil offices. For example, the Special Assistant U.S. Attorneys, JAG lawyers who are assigned to be Special Assistant U.S. Attorneys, perform civil functions in furtherance of their assigned official duties. But if your reading of the authorization or the savings clause is correct, then you really have no reason to fix any problem that's been identified, right? Except that you see, you know, the person shouldn't be serving there, but everything he does is okay, so we don't have to remove him. Well, no. I think that we think we are obligated to comply with the law, and the executive branch does and takes that seriously. And that's the history of enforcement of the civil office holding prohibition, is that as the Olson memo, for example, that brought to light the violation that had been happening before 1983, the government raised the issue and then took action to correct the issue. But how would a problem arise given the savings clause? Given the savings clause, I think a problem would arise in the way that problems arise. There are lots of statutes that apply to Federal personnel matters or that prohibit certain actions by Federal employees, but don't invalidate their actions as a result of a violation. And the way that those things are policed are by Inspectors General, by Congressional Oversight, and the Government Accountability Office, by the Office of Legal Counsel and the lawyers within the agencies. All of those things are still available, and indeed, the sources cited in the briefs show that the government is taking seriously its obligation to enforce the statute. That will continue, and in fact, the directive also that we cite makes the acceptance of the civil office. If an officer just goes out and does it, you know, on their own, without authorization, it makes taking that action a violation of a lawful order that is potentially subject to disciplinary action. So there would certainly be remedies, just not the drastic remedy of ejectment from the military or invalidation of official actions. We think there's a good reason why Congress chose that scheme, and we'd ask the Court to adhere to it. If the Court has no further questions. Roberts. Roberts. Thank you, counsel. Mr. Vladeck, you have 5 minutes left. Vladeck. Thank you, Mr. Chief Justice. Just to briefly address one point on jurisdiction before turning back to the merits. The amicus relies on this Court's decision in Vallandigham. I actually think Vallandigham proves the point that both I and Mr. Fletcher were trying to make. The Court in Vallandigham went out of its way to explain why the military commission itself was not, quote, judicial, unquote, in the sense of Article III. The analogy, of course, to this case would be to the underlying court-martial proceeding and not to the decisions by the courts of criminal appeals or by the court of appeals for the armed forces. Turning to the merits, I think it's important to stress the emptiness of the government's suggestion that it has been engaged in rigorous administrative enforcement of the statute. On its reading of both Section 973b-5 and of the deletion of the automatic termination provision, there is, in fact, no consequence for violating a statute Congress enacted to ensure civilian control of the military, for protecting the civilian sphere of government from having military officers serving in all kinds of positions. And there would be no remedy, especially in a case like this one, where the problem at issue is not a general objection to military officers serving in administrative positions, but a very specific objection to military officers serving as judges. This Court has for decades suggested that there are unique separation of powers considerations and there are unique doctrinal and common law reasons to take especially seriously concerns that judges are acting without authority. It's why this Court in both the Ryder case and Nguyen held that the de facto officer doctrine does not apply to immunize at least nontechnical violations of judicial assignment rules, and it's why the separation of powers problem we've identified is especially serious in this context. One last point, though. The neither the government doesn't talk about the did not talk about the Commander in Chief Clause in its merits argument, but I think it's worth stressing just how serious a Commander in Chief Clause problem a ruling in its favor could create. Under judges who are appointed to the court of military commission review under section 950FB3 serve with good cause removal protection. What that means is if they are military officers, they are insulated from removal by good cause, which of course takes them out of the chain of command. Now, rather than suggest that that is a constitutional constraint on the President as Commander in Chief, the government argues that in fact a judge who is appointed to the CMCR by the President and confirmed by the Senate can be reassigned by the general counsel of the Department of Defense. There is no suggestion in the Military Commissions Act that Congress intended such a, frankly, bizarre reassignment scheme, and there's no explanation for how that would solve the Commander in Chief Clause problem. We agree that that question is not squarely presented here because it would only invalidate the ability of these judges to serve on the court of military commission review. But given that there is a petition for writ of mandamus pending in the D.C. Circuit by two of the defendants in the 9-11 trial, we think it incumbent upon this Court to reach the merits question and not just rely on the remedies consideration, even if it is inclined to affirm the decisions below. There are no further questions. Roberts. Thank you, Counsel. Thank you, Mr. Banzai, for your participation. The case is submitted.